## N. G. HIGHLAND *et al* vs. THOMAS HIGHLAND *et al.*

July Term, 1871.

1. In the prayer of a bill, parties are described as "Whitely & McConkey," and in the charging part the same parties are prayed to be made defendants, except that these parties are described as "McConkey & Co." In the first part of the decree, they are styled "McConkey & Co.," and in the latter part they are called "Whitely & McConkey." It being apparent that they are the same parties, there is no error in overruling a demurrer for that cause.

2. Ja. and J. dissolved partnership. Ja. took the stock of goods and agreed to pay their cost value to J. J. took the book accounts, notes, &c., and assumed to pay the debts of the firm. T. became the surety of J., whereupon the latter assigned him in trust, the indebtedness for stock due from Ja., and other property. Joint judgments were had against all three of the parties by creditors of the firm. T. paid off the judgments, and the property assigned by J. failed to reimburse him. He filed a bill against Ja. and others, praying to be substituted to rights of the creditors of the firm, and to enforce his claim assigned by J. HELD:

    I. The judgments having been rendered against T. as well as the other parties, and the debts paid by him being firm debts, which he became liable for as the surety nominally of J., who represented the late firm, and which Ja. was also pre-eminently liable to pay, he ought to stand as surety to the firm and be entitled to be subrogated to all the rights of the creditors thereof.

    II. He was a creditor at large of Ja., by reason of the assignment, and as such was entitled to file a bill to impeach a fraudulent conveyance of land in which Ja., was interested.

3. An assignee of a bond taken in payment of purchase money of land, although he may have notice of fraud in the sale of the land, cannot be placed in a worse condition than his assignor, the vendor, with reference to the payment of such purchase money.

4. A case in which a conveyance of land was had to hinder, delay and defraud creditors.

This cause came from Harrison county. The bill was filed in the circuit court at August rules, 1864, by Thomas Highland. It alleged that in 1850, John Highland, son of the

*Judge Maxwell had been engaged as counsel in the cause below.

64          COURT OF APPEALS OF WEST VIRGINIA.

July Term,          Highland et al. vs. Highland et al.          1871

complainant, and Jacob Highland, his brother, were merchants trading under the firm and style of John H. Highland & Co. That they becomelargely indebted and entered into an agreement whereby it was stipulated that Jacob should take the stock of goods on hands at cost, the amount thereof to be paid to John in three payments, at six, twelve, and eighteen months,; that John should also take the accounts and notes due the firm, and assume its indebtedness. That John, in order to secure Jacob from liability in the payment of the indebtedness, induced the complainant, Thomas, to become surety for the same, and, to indemnify the latter, executed a trust deed on the 4th of August, 1851, on sundry property belonging to John. That a difficulty arising between John and Jacob as to the settlement of their affairs under the agreement, they submitted the adjustment thereof to the arbitrament of Waldo P. Goff, who rendered an award on the 22d day of August, 1851, providing that Jacob should pay to John two thousand two hundred and thirty-four dollars and nine cents, in three equal payments of six, twelve and eighteen months, and that said sum should be applied to the payment of debts against John and others in the hands of an attorney for collection. That Jacob failing to pay the first installment of this award, a suit was instituted and judgment recovered, in 1851 for the amount thereof, seven hundred and forty-four dollars and sixty-nine and two-thirds cents. That this judgment remained unpaid. That the whole amount due from Jacob to John was included in the trust deed from John to Thomas. That the debts for which Thomas thus became surety were the debts of John Highland & Co. That the debts for which the plaintiff, Thomas, thus became surety, were paid out of his own property, and that the trust effects wholly failed to reimburse him. That John Highland died intestate, and one Philander S. Austin became his administrator.

The bill charged that the plaintiff, Thomas, had a right to resort to the effects of John to be reimbursed for the money so paid to him, and to be substituted to the rights of the creditors who had judgments against Jacob. It appears that the judgments were obtained jointly against John, Jacob and Thomas. The bill further charged that in 1861, one James

Lynch and wife conveyed to N. G. Highland, a son of Jacob, one hundred and forty acres of land, in consideration of the sum of one thousand five hundred and seventy-seven dollars and forty-one cents. That the consideration was furnished wholly by Jacob, and the deed was made to N. G. Highland with the fraudulent intent and purpose of hindering and defrauding the just claims of the creditors of Jacob. That the plaintiff had a right to resort to the land for the payment of such sums as he had paid as surety. The administrator of John Highland, Jacob Highland and the creditors of John Highland & Co., and one Hiram J. Lynch, to whom it appeared that a certain bond for unpaid purchase money due James Lynch on the land, had been assigned, were made parties defendant.

N. G. Highland answered, denying the fraud in the purchase of the land from Lynch, and claiming to be the owner thereof. Hiram J. Lynch answered, denying all knowledge of fraud in the sale of the land by James Lynch, and claiming to be a *bona fide* assignee, and also claiming the benefit of the lien reserved in the deed to secure his unpaid purchase money.

The cause was referred to a master, who reported a number of judgments paid by plaintiff, and a final decree was rendered at March term, 1868, on the return of process served on resident defendants, bill taken for confessed as to those who failed to answer, and foreign defendants appearing and consenting. The decree found the sum due the plaintiff, being the amount of judgments paid by him and the judgment in favor of John Highland against Jacob Highland for seven hundred and forty-four dollars and sixty-nine and two-third cents, with interest. It also declared the sale of the land from James Lynch to N. G. Highland to be fraudulent and void as to N. G. Highland, and decreed that the land be sold as the property of Jacob Highland, in satisfaction of the plaintiff's claim. It further declared that H. J. Lynch had no valid lien or claim against the land as against the creditors of John Highland & Co., and those who were substituted for them, the plaintiff occupying that position.

There was a great amount of testimony taken in the cause, the burden of which was to charge fraud in procuring the conveyance of the land from Lynch to N. G. Highland, and

which this court held to be clearly shown, but that James Lynch, the vendor, was not a party to the fraud. Such further detail as is necessary to a proper understanding of the case will be found in the opinion of the judge.

N. G. Highland and H. J. Lynch appealed to this court.

*Boggess* and *Lewis* for the appellants.
*Lee* for the appellee.

BERKSHIRE, P.   The first, second, and third errors assigned for reversing the decree are, in substance, the same : being objections to the bill for not making Whitely & McConkey parties, and also for improperly making *McConkey & Co.* parties.   For which reasons, it was insisted, the bill should have been dismissed upon the demurrer taken to it.   In the charging part of the bill, the firm of Whitely & McConkey is enumerated, among others, as one of the creditors of the late firm of John Highland & Co.   It the *prayer* of the bill, however, the same creditors that are named in the charging part, are prayed to be made parties defendant, except that instead of Whitely & McConkey, they are described as McConkey & Co.   In the first part of the final decree, they are styled McConkey & Co., and as one of the foreign creditors of the late firm of John Highland & Co. (all of whom waived process and consented to the hearing of the cause), and again in the latter part of the same decree, as Whitely & McConkey ; and throughout the record they are indifferently designated as "Whitely & McConkey," "McConkey & Co," and "Whitely, McConkey & Co."   It is quite apparent, therefore, that they are one and the same party, and consequently there was no error in not sustaining the demurrer on this account. And, moreover, it could not be error to the prejudice of the appellants, or either of them.   The next objection urged is, that the court proceeded to final decree without having Philander S. Austin, the administrator of John Highland, before it.   As the final decree recites that the cause was heard, by consent, as to the non-resident defendants (who waived process), and process duly served on the resident defendants who had not filed answers, I think it is conclusive of the question, even if it were competent for the appellants to make such

objection here for the first time, as to which, however, it is unnecessary to express an opinion. It was further argued, that it was error to charge the debts due from John Highland & Co., upon which the judgments were had, to the appellant, Nathaniel G. Highland, or against the land in controversy. And it was also insisted that the appellee stood on the footing of a *volunteer* as to Jacob Highland in paying the debts aforesaid. I do not propose to review the evidence found in the record, but from it I think it is made quite manifest, that the transaction between Jacob and N. G. Highland, his son, in the purchase and conveyance from James Lynch of the tract of land in controversy was grossly fraudulent, as between them and the creditors of the former. In the bill, the appellee claims the right to subject the land in dispute to his claim, both as assignee of the debt originally due from Jacob to John Highland for the stock of goods formerly owned by John Highland & Co., and also by way of substitution to the rights and liens of the judgment creditors of said firm. It appears that all the judgments paid by the appellee were rendered against him and the said Jacob and John Highland, except the one in favor of Obrien, Grafflin and Frick (which debt was originally due from said firm), which was rendered against the appellee, John Highland and Richard Perine. It is also clear that *all* the debts paid by him were *firm debts*, and were among the debts he became liable for as the surety, nominally, of John Highland, who represented the late firm, which debts Jacob Highland was also pre-eminently liable to pay; and I think, therefore, he ought, in equity, to stand in the relation of a surety to the late firm, and be entitled to be subrogated to all the rights of the creditors of such firm. He is also a creditor at large of Jacob Highland, by reason of said assignment, and as such, had a right to file his bill to impeach the deed from James Lynch to N. G. Highland, for fraud, &c. This assignment bears date prior to the submission to, and award of, Waldo P. Goff; and there being no evidence to show his assent, as to the application or disposition made by the award, of the sum found due from Jacob to John Highland for said stock of goods, he was not bound by it, and was entitled to the whole amount so awarded to John Highland. And being so entitled, the judgment obtained in John's name

68 COURT OF APPEALS OF WEST VIRGINIA.

July Term,      Highland *et al.* vs. Highland *et al.*      1871.

against Jacob Highland for the amount of the first install-
ment of said award, enured also to the benefit of the appellee,
and he was accordingly entitled to have it charged on the
land in controversy, it appearing that the amount of said
judgment and the amount of the judgments paid by him,
aggregated, do not exceed the amount of Jacob's indebtedness
to him on account of said assignment. It was further as-
signed as error, and insisted on, that the court erred in
rejecting the claim of Hiram J. Lynch for the residue of the
purchase money alleged to be due him from the appellant,
N. G. Highland, and not holding a lien on the land in dispute
for the amount of the same. This presents a grave and
material question, and its solution must depend on the fact,
whether James Lynch, the vendor, had notice of the fraud
contemplated by Jacob and N. G. Highland at the time of the
conveyance by him to the latter, of the land now in contro-
versy. For if this is not made to appear clearly by the testi-
mony, his assignee, H. J. Lynch, even though he were affected
with such notice himself, could not thereby be placed in a
worse condition with reference to the payment of the pur-
chase money than his vendor, and must therefore be protected.
2 Tuck. Comn., 450; *Garland* vs. *Rives*, 3 Mun., 282; *Curtis* vs.
*Jones, Exor.*, 6 Mun., 42. The enquiry, therefore, now is, does
it satisfactorily appear from the record, that Lynch, the
vendor, had such notice? The bill charges that the purchase
money for said tract was in fact paid by Jacob and the deed
taken to his son, Nathaniel G. Highland, in order to hinder
and defraud the creditors of the former, and that the trans-
action as between them and the creditors was fraudulent, &c.,
said Jacob being in truth the real owner of the property, &c.
But it is not alleged in the bill that James Lynch was privy
to or had knowledge of the fraudulent purpose of the father
and son; nor is there any positive evidence found on the
record of such knowledge on the part of said Lynch. If,
therefore, such notice can be brought home to him, it must
be deduced from the facts and circumstances of the case.
Without now adverting to them in detail, a careful examina-
tion and consideration of the whole case has not satisfied me
that said Lynch's conduct in the premises was wholly incom-
patible with a *bona fide* purpose and transaction on his part.

But while there is certainly enough in the evidence to awaken *suspicion* against him, I am still not prepared to say that such a knowledge of the contemplated fraud between the father and son is fixed upon him, as would involve him in its consequences. I am of opinion, therefore, that he was entitled, at the time of the conveyance, to the residue of the purchase money then actually due him for the land in controversy; and that Hiram J. Lynch, his assignee, is also entitled to the same. It is very manifest, however, that the amount claimed to be due on the purchase money, at the time of the execution of the deed from James Lynch to N. G. Highland, was not *in fact* due, and the effort to secure more than was really due is not accounted for, nor is it free from suspicion, though I do not think we would be justified in concluding that the conduct of Lynch, in this respect, was irreconcilable with an honest intention on his part. In the deed from him to N. G. Highland, the consideration is correctly stated at one thousand five hundred and seventy-seven dollars and forty-one cents; but the payment of only seven hundred and sixty-seven dollars and sixty-four cents is admitted, and the balance claimed to be due is eight hundred and nine dollars and seventy-seven cents, for which the vendee executed his obligation, and a lien was reserved in the deed for this amount. Now this is a manifest error, and it is distinctly shown by the *testimony* of Lynch himself. In his evidence, taken in the cause, he admits that one thousand two hundred and thirty dollars was paid on the *purchase money*, all which, except thirty dollars, was actually credited, as he states, and as is shown by the original obligation for one thousand five hundred and seventy-seven dollars and forty-one cents, which is filed in the cause, with the endorsements thereon. These payments, therefore, were applied by the parties themselves *at the time they were made*, to the payment of this purchase money, and it was not competent for them *afterwards* to apply the money elsewhere to the prejudice of the creditors of Jacob Highland. Applying these payments to the purchase money, and allowing interest on it from the time it fell due to the date of the deed aforesaid, it will be found that, instead of the amount claimed and secured in the deed being really due on the purchase money, there was in truth, less than six

hundred dollars then due on it to Lynch.   And this amount, so actually due after applying the whole of the one thousand two hundred and thirty dollars shown to have been paid on the purchase money, and no more, as we have seen, Hiram J. Lynch, as assignee of James Lynch, is entitled to out of the proceeds of the land in controversy; and it appears to me, therefore, the court erred in excluding the whole of his claim, and holding that he had no lien on the said land for any part of said purchase money.   In the respect herein indicated, I think the decree is erroneous, and should be reversed, with costs, and the cause remanded to the circuit court for further proceedings.

Moore, J., concurred.

DECREE REVERSED.